J-S45041-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| ERIC THEADY BANKS | : | |
| Appellant | : | No. 539 MDA 2024 |

Appeal from the PCRA Order Entered March 14, 2024
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0001361-2018

BEFORE:  OLSON, J., DUBOW, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED MARCH 14, 2025**

Eric Theady Banks appeals from the order denying his Post Conviction Relief Act ("PCRA") petition. ***See*** 42 Pa.C.S.A. §§ 9541-9546. He argues that trial counsel was ineffective for failing to withdraw due to his prior representation of a potential Commonwealth witness and for failing to further question or strike a juror who indicated she knew two of the Commonwealth's witnesses. We affirm.

The facts of this case were previously summarized as follows:

> The events occurred at a private residence [address omitted] at approximately 10:30 p.m. on November 18, 2017. A sizable group of family and friends had gathered at the residence due to the family receiving news that an aunt had been diagnosed with terminal cancer. Between 10:30 p.m. and 11:00 p.m., [Banks] arrived at the residence and began to argue with his then girlfriend [name omitted]. At this point the victim, [L.T.], told [Banks] to leave because there were several children present. In response, [Banks] opened his coat and flashed [L.T.] a gun under the coat. He

did this three or four times. [L.T.] testified that she was not initially afraid because [Banks] was known to her from a previous relationship years earlier. However, when the children ran toward the scene, she realized the potential danger of the situation and immediately began to fear an imminent threat [Banks] posed to her and her family. At that point the women of the household, including [the then girlfriend and L.T.], managed to get him to leave the house. Shortly thereafter, multiple people reported hearing gunshots immediately after [Banks] left the house and before he drove away. Three shell casings were found on the ground approximately one block away from the residence.

On November 7, 2018, the case proceeded to a jury trial. At the close of evidence, the parties stipulated that [Banks] did not have a concealed carry permit and was not permitted to carry a firearm. On November 8, 2018, the jury found [Banks] guilty of simple assault, persons not to possess firearms and carrying a firearm without a license. The jury acquitted [Banks] of reckless endangerment.

On January 30, 2019, the court imposed the following consecutive sentences: 8-16 years' imprisonment for persons not to possess firearms, 3½-7 years' imprisonment for carrying firearms without a license, and 1-2 years' imprisonment for simple assault. [Banks] filed timely post-sentence motions, which the court denied, and a timely notice of appeal.

*Commonwealth v. Banks*, No. 200 MDA 2020, 2020 WL 7706756, at *1 (Pa.Super. filed Dec. 29, 2020) (unpublished mem.) (citation omitted, some alterations in original).

This Court affirmed Banks' judgment of sentence. **See id.** Banks filed a petition for allowance of appeal with the Pennsylvania Supreme Court. While that petition was pending, Banks filed a *pro se* PCRA petition on March 23, 2021. The court appointed counsel, who filed an amended PCRA petition. In

the meanwhile, the Pennsylvania Supreme Court denied allowance of appeal on July 7, 2021.

Subsequently, on April 28, 2022, the PCRA court held a hearing on the petition, in which Banks' trial counsel, Clarence Allen, Esquire, testified. The PCRA court summarized the testimony at the hearing as follows:

Attorney Allen took the stand and testified that he had represented [Banks]. Attorney Allen testified that, at that time, he was also representing clients in matters outside of criminal law; however, he denied representing [potential Commonwealth witness O]nissa Tyler at that time. Attorney Allen stated that he had represented Ms. Tyler a few years prior in a custody matter that had been resolved, but Attorney Allen admitted that he had not withdrawn as counsel and was still counsel of record for Ms. Tyler. Attorney Allen's understanding was that Ms. Tyler would have testified that [Banks] had been present at a party on the day in question and that this testimony would have been detrimental to [Banks]. Attorney Allen testified that he talked to the witness and was led to believe that her testimony was not going to help [Banks]; but, rather, Ms. Tyler's testimony would have solidified the testimony of other witnesses against [Banks]. In addition to affirming that [Banks] was present at a party, Ms. Tyler would have been one of two witnesses to testify that they had seen [Banks] in possession of a firearm that night. Attorney Allen believed that Ms. Tyler would have been a key witness for the Commonwealth.

PCRA counsel questioned Attorney Allen about Ms. Tyler being unavailable for trial because of Attorney Allen stipulating that she was unavailable for trial. Attorney Allen responded that Ms. Tyler was, at the time of trial, in the hospital or had just gotten out of the hospital. Attorney Allen was questioned about his statements at trial, regarding the stipulation that Ms. Tyler was unavailable to testify as a witness, that Ms. Tyler had been scheduled to meet with Attorney Allen at his office in the weeks preceding trial — despite Attorney Allen describing Ms. Tyler, at the PCRA proceedings, as a former client at the time of trial. Attorney

- 3 -

Allen responded that he had wanted to speak with Ms. Tyler, prior to trial, about what had happened at the party, but that he discovered that Ms. Tyler was in the hospital.

Turning to jury selection, Attorney Allen testified that he remembered a juror admitting to knowing LaTia Tyler and [O]nissa Tyler. The juror knew these witnesses from the community. Attorney Allen could not recall whether the Commonwealth had followed up with the juror, but it was his belief that the [c]ourt had inquired whether the juror would be able to render a fair decision. Following PCRA counsel presenting the section of the trial transcript dealing with *voir dire*, Attorney Allen agreed that the sections dealing with the juror in question, Juror 19, did not include questioning by either counsel or the judge regarding whether Juror 19 could be impartial. However, Attorney Allen thought that Juror 19 might have been helpful to the defense as she was the only African American in the jury pool. In fact, Attorney Allen discussed this with [Banks] and "we felt we wanted that particular juror as a juror because we - - again, an African American juror and [sic] we felt she would be more sympathetic to [Banks'] case." Attorney Allen disagreed with PCRA counsel's portrayal of Attorney Allen's stance as being that the race of a juror was more important than the possibility of that juror being biased towards the Commonwealth witnesses. Attorney Allen agreed that he did not probe the depth of that juror's knowledge of the witnesses whom the juror knew from the community.

On cross-examination, Attorney Allen testified to his belief, at trial, that Ms. [O]nissa Tyler's testimony would have been detrimental to his client and that her unavailability was a benefit to [Banks]. Attorney Allen reaffirmed that his representation of Ms. Tyler had been in a custody matter some two or three years prior and that he still knew her family. Attorney Allen confirmed that [Banks] is African American.

PCRA Court Opinion, filed 9/16/22, at 3-6 (citations to transcript omitted, emphasis removed, some alterations in original).

On September 16, 2022, the PCRA court denied Banks' petition. Banks appealed and this Court quashed as the PCRA petition was premature. ***See Commonwealth v. Banks***, No. 1477 MDA 2022, 2023 WL 5995523, at *4 (Pa.Super. filed Sept. 15, 2023) (unpublished mem.). We noted that at the time Banks filed his initial petition, his petition for allowance of appeal in his direct appeal was pending in the Pennsylvania Supreme Court, and, therefore, his judgment of sentence was not yet final. ***Id.*** Thus, we determined that the PCRA court had no jurisdiction to review the case. ***Id.*** We further noted

> that during the pendency of the present appeal, more than a year has passed from the date [Banks'] judgment of sentence became final. Therefore, Banks is no longer eligible to file a timely PCRA petition. ***See*** 42 Pa.C.S. § 9545(b)(1). His relief, if any, is to petition the PCRA court for leave to file a PCRA petition *nunc pro tunc*. We express no opinion as to whether such a petition should be granted.

***Id.*** at *5 n.10.

On October 17, 2023, Banks requested permission from the trial court to file a PCRA petition *nunc pro tunc*. The PCRA found that there was a "breakdown" of the operation of the court due to its failure to dismiss Banks' original PCRA proceedings without prejudice to Banks' right to file a petition once his direct appeal rights were exhausted. ***See*** Order, 10/31/23, at 4. Thus, the PCRA court granted Banks' petition for leave to file a PCRA petition *nunc pro tunc*. ***See id.***[1]

---

[1] We agree that a "breakdown" justifying *nunc pro tunc* relief occurred. The PCRA court's failure to dismiss the original PCRA proceedings led Banks to believe that the proceedings were proper, and he did not find out otherwise until this Court quashed in September 2023.

- 5 -

Banks filed his PCRA petition on January 12, 2024, which was a resubmission of Banks' previous PCRA petition. On March 14, 2024, the court denied Banks' petition and incorporated its prior order and opinion denying the initial PCRA petition. This appeal followed:

Banks raises the following issues:

I.     Whether the court erred in denying [Banks'] PCRA petition when the court determined that trial counsel was not ineffective for failing to withdraw as counsel due to a conflict of interest when trial counsel was still counsel of record for a witness of the Commonwealth at the same time as his representation of [Banks]?

II.    Whether the court erred in denying [Banks'] PCRA petition when the court determined that trial counsel was not ineffective for failing to further question and strike a juror for personal bias when the juror admitted to knowing two of the Commonwealth witnesses?

Banks' Br. at 4 (some capitalization omitted).

On appeal from the denial or grant of relief under the PCRA, our review is limited to determining "whether the PCRA court's ruling is supported by the record and free of legal error." ***Commonwealth v. Presley***, 193 A.3d 436, 442 (Pa.Super. 2018) (citation omitted).

Banks raises two claims of trial counsel's ineffectiveness. "[C]ounsel is presumed to be effective and the burden of demonstrating ineffectiveness rests on [the] appellant." ***Commonwealth v. Rivera***, 10 A.3d 1276, 1279 (Pa.Super. 2010). To obtain relief based on a claim of ineffectiveness, a petitioner must establish: "(1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the

petitioner suffered actual prejudice as a result." ***Commonwealth v. Spotz***, 84 A.3d 294, 311 (Pa. 2014). Prejudice in this context means that, "absent counsel's conduct, there is a reasonable probability the outcome of the proceedings would have been different." ***Commonwealth v. Velazquez***, 216 A.3d 1146, 1149 (Pa. Super. 2019) (citation omitted). A failure to meet any of these prongs bars a petitioner from obtaining relief. ***Commonwealth v. Sneed***, 45 A.3d 1096, 1106 (Pa. 2012).

Banks first argues that trial counsel was ineffective for not withdrawing from representation despite having an actual conflict of interest. Banks' Br. at 8. He contends that at the time of the trial, Attorney Allen remained counsel of record for Onissa Tyler, who was one of the Commonwealth's witnesses, in an "open" custody matter and "had a close relationship" with her family. ***Id.*** at 11-13. In Banks' view, "the only reason trial counsel had for stipulating the witness was unavailable was to protect himself from the conflict of interest that would have arisen from the witness testifying, rather than pursuing a reasonable trial tactic that trial counsel believed would benefit [Banks]." ***Id.*** at 13. Banks concludes that "trial counsel deprived [him] of the opportunity to cross-examine a key witness for the Commonwealth by stipulating that the witness was unavailable in an effort to avoid his own conflict of interest." ***Id.***

To prevail on a claim that counsel had a conflict of interest, the petitioner must prove an actual conflict. ***See Commonwealth v. Sepulveda***, 55 A.3d 1108, 1147 (Pa. 2012). An actual conflict exists where the petitioner shows that: "(1) counsel actively represented conflicting interests; and (2) those

conflicting interests adversely affected his lawyer's performance." ***Commonwealth v. Collins***, 957 A.2d 237, 251 (Pa. 2008) (citation and internal quotation marks omitted). "Clients' interests actually conflict when 'during the course of representation' they 'diverge with respect to a material fact or legal issue or to a course of action.'" ***Sepulveda***, 55 A.3d at 1147 (quoting ***Collins***, 957 A.2d at 251). We presume prejudice when the petitioner shows an actual conflict. ***See Commonwealth v. Tharp***, 101 A.3d 736, 754 (Pa. 2014).

Here, Banks has failed to show an actual conflict of interest. He has not established that Attorney Allen actively represented conflicting interests or that the alleged conflict adversely affected his performance. At the time of trial, Attorney Allen was not representing Onissa Tyler. Rather, he represented her in an unrelated custody case that had concluded years before Banks' trial. Banks merely established that Attorney Allen had not taken the administrative step of withdrawing his appearance in the custody case. He presented no evidence that Attorney Allen was actively representing Onissa Tyler at the time of his trial. Moreover, Attorney Allen stated on the record at Banks' trial that Onissa Tyler was a former client of his, so Banks was aware of this fact at trial. ***See*** N.T. Trial, 11/8/18, at 5.

Furthermore, Onissa Tyler never testified at trial because she was unavailable and the record reflects that it was the Commonwealth that originally suggested that the parties stipulate that she was unavailable at trial because she was ill and her testimony would be cumulative. ***Id.*** Attorney Allen

testified at the PCRA hearing that he believed that Onissa Tyler's testimony would have been detrimental to Banks and that her unavailability was a benefit to his client because she would have testified that Banks had been present at a party on the day in question. *See* N.T. PCRA Hearing, 4/28/22, at 10, 17. The PCRA court credited this testimony. *See* PCRA Ct. Op. at 19. Having failed to show either an actual conflict or prejudice, Banks' claim fails.

In his second claim, Banks argues that Attorney Allen was ineffective because he failed to further question and strike a juror after she admitted during *voir dire* to knowing two Commonwealth witnesses, Onissa Tyler and Latia Tyler. He argues that by admitting that she knew the two witnesses, "the juror made a statement indicating a positive bias towards the main witnesses testifying against [him]." Banks' Br. at 19. Banks maintains that once the juror stated that she knew both witnesses, counsel should have asked follow-up questions to determine if the juror could be fair and impartial. *Id.* at 17. Banks argues that Attorney Allen's basis for not further questioning the juror – that the juror was the only African American juror in the jury pool and thus, would be more sympathetic to Banks – was not a reasonable strategy. *Id.* at 17-18.

"A defendant has a right to an impartial jury pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, § 9 of the Pennsylvania Constitution." *Commonwealth v. Chmiel*, 889 A.2d 501, 519 (Pa. 2005). The purpose of *voir dire* is to aid the empaneling of a "competent, fair, impartial, and unprejudiced jury[.]" *Commonwealth v. Holt*, 273 A.3d 514, 546 (Pa. 2022) (citation omitted).

The test for determining whether a prospective juror should be disqualified is whether he or she is willing and able to eliminate the influence of any scruples and render a verdict according to the evidence. This decision rests within the sound discretion of the trial court, must be based upon the juror's answers and demeanor, and will not be reversed in the absence of a palpable abuse of this discretion.

Jurors should be disqualified for cause when they do not have the ability or willingness to eliminate the influences under which they are operating and therefore cannot render a verdict according to the evidence. Thus, a challenge for cause should be granted when the prospective juror has such a close relationship, familial, financial, or situational, with the parties, counsel, victims, or witnesses that the court will presume a likelihood of prejudice or demonstrates a likelihood of prejudice by his or her conduct and answers to questions.

*Commonwealth v. Robinson*, 864 A.2d 460, 489-90 (Pa. 2004) (cleaned up). "A remote relationship to an involved party is not a basis for disqualification where a prospective juror indicates during *voir dire* that he or she will not be prejudiced." *Commonwealth v. Colson*, 490 A.2d 811, 818 (Pa. 1985), *overruled on other grounds by Commonwealth v. Burke*, 781 A.2d 1136 (Pa. 2001).

Instantly, the following exchange occurred at trial during *voir dire*:

[THE COMMONWEALTH]: Witnesses that may be called in this matter include Latia Tyler. Is anyone familiar with Ms. Tyler?

All right. There is actually a hand up. What is your juror number?

JUROR N0. 19: 019. Just throughout the community.

[THE COMMONWEALTH]: Okay. Thank you, ma'am.

I'm sorry. What was your number?

JUROR N0. 19: 019.

- 10 -

[THE COMMONWEALTH]: 019. Thank you.

There may be another witness named Onis[sa] Taylor. Anyone familiar with her. 019?

JUROR N0. 19: Yes.

[THE COMMONWEALTH]: You're also just familiar with her from the community?

JUROR N0. 19: Correct.

N.T. Trial, 11/8/18, at 33.

Later during *voir dire*, the court made the following inquiries:

THE COURT: . . . Does any member of the panel have any moral, religious, or conscientious belief about being able to sit as a juror in this case and determine the issues of guilt or innocence of the Defendant on the charges that have been brought? If so, please raise your hand.

That's a negative response.

Does any member of the panel have any doubt or hesitation about being able to follow my instruction that each Defendant, including Mr. Banks, is presumed to be innocent until proven guilty beyond a reasonable doubt by evidence presented in court?

That's a negative response.

Does any member of the panel have any doubt or hesitation about being able to consider the evidence in this case fairly and impartially because of the nature of the charges? Something in those charges is [resonating] with you, and you're going, yeah, I don't think I can be fair and impartial in this trial. If so, please raise your hand.

JUROR N0. 140: 140. You said assault.

THE COURT: It's firearms not to be carried without a license, simple assault, recklessly endangering another person, and a person not to possess a firearm.

JUROR N0. 140: I would have issues with the assault.

THE COURT: All right. Thank you.

- 11 -

Anyone else? That's a negative response.

Do any of you have any doubt or hesitation about being able to follow my instruction that the mere arrest of the Defendant and his presence here for trial is not evidence against him?

That's a negative response.

Do any of you have any doubt or hesitation about being able to follow my instruction that if the Defendant chooses not to take the witness stand or chooses not to present evidence, it may not be considered negatively against him?

That's a negative response.

Do any of you have any other doubts or hesitation about your willingness to accept and apply the law as I instruct you upon it? Something I haven't specifically, asked but you're sitting there going, yeah, I'm not sure I can do this.

That's a negative response.

Sitting there right now, has any member of this panel developed a fixed opinion? In other words, you've already made up your mind about the guilt or innocence of the Defendant on the charges that are being brought.

That's a negative response.

*Id.* at 50-52.

The record thus reflects that the juror indicated that she knew the witnesses "just through the community." *Id.* at 33. There was no indication that the juror had a close familial or financial relationship with the witnesses or possessed obvious bias. Thus, prejudice cannot be presumed. *Robinson*, 864 A.2d at 489-90. Moreover, the juror confirmed by her lack of response to the court's questions that she had not developed a fixed opinion about Banks' guilt or innocence and could decide the case fairly and impartially. Further, Attorney Allen had a reasonable strategic basis for allowing the juror to be

selected because he believed that the juror, who was the only African American juror in the jury pool, would be helpful to Banks. Banks' ineffectiveness claim therefore fails.

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 03/14/2025